UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

———

LABEED NOURI, Individually and as
NEXT OF FRIEND of HAKAM NOURI,
a minor, JACOB NOURI, a minor, SAMI
NOURI, a minor, MARIA NOURI, a minor,
and ROUWAIDA NOURI,

        Plaintiffs,        Case No. 2:10-cv-13700

v.        Honorable R. Allan Edgar

COUNTY OF OAKLAND, SHERIFF
MICHAEL BOUCHARD, SERGEANT
CHRIS MILLER, in his individual and
official capacity, DEPUTY KARSEN, in her
individual and official capacity, DEPUTY
HEIN, in his individual and official capacity,
DEPUTY JAMES GREGORY, in his
individual and official capacity, HALA
JARBOU, in her individual and official
capacity, HAZEL PARK POLICE
DEPARTMENT, and LT. JASON WIEMER,
in his individual and official capacity,

        Defendants.
_____/

## MEMORANDUM AND ORDER

      Plaintiff Labeed Nouri ("Plaintiff Nouri") filed his pro se complaint in this case in September of 2010. Doc. No. 1. Plaintiff Nouri filed an amended complaint, with the assistance of newly retained counsel, on March 6, 2012. Doc. No. 85. The amended complaint added Plaintiff's wife and children as co-plaintiffs, along with new defendants. *Id*. Defendants Oakland County, Bouchard, Hein, Jarbou, Karsen, Gregory, and Miller ("Oakland County Defendants") filed a motion for partial dismissal of Plaintiff's amended

complaint, pursuant to Fed. R. Civ. P. 12(b)(6), and on the pleadings, pursuant to Fed. R. Civ. P. 12(c). Doc. No. 88. Defendants Wiemer and Hazel Park Police Department filed a concurrence to that motion. Doc. No. 111. The Court has considered this motion, along with Plaintiffs' response brief, supplemental response brief, and the reply brief that was filed, and the matter is now ready for decision.

## Facts

The facts, as alleged in Plaintiffs' amended complaint, are as follows: Plaintiff Nouri is an orthopedic surgeon. Doc. No. 85, p. ID 886, ¶ 13. Krystal Kirma, an employee of Plaintiff Nouri's, filed a police report alleging that Plaintiff Nouri had sexually assaulted her on June 22, 2007. *Id.*, ¶¶ 17, 21. Defendant Wiemer was the lieutenant placed in charge of investigating the matter. *Id.*, ¶ 22. Defendant Wiemer interviewed Kirma, her boyfriend Savio Yousif, Plaintiff Nouri, and others. *Id.*, ¶ 23. Additionally, Defendant Wiemer retrieved Kirma's and Plaintiff Nouri's phone records. *Id*. Plaintiff Nouri alleges that his phone records clearly contradict the assault timeline described by Kirma. *Id.*, ¶ 24-26. After conducting his investigation, Defendant Wiemer referred the matter to the Oakland County Prosecutor's Office. *Id.*, ¶ 24. Defendant Jarbou was the assistant prosecutor who prosecuted the case against Plaintiff Nouri. *Id.*, ¶ 28. Plaintiff Nouri alleges that Defendant Jarbou failed to conduct a full investigation of the crimes that he was charged with because she may harbor a prejudice towards men of Chaldean heritage. *Id.*, ¶ 48. In support of that assertion, Plaintiff Nouri attaches an affidavit from Luay Michaels and one from himself. Doc. No. 85, Ex. A, p. ID 918. In their affidavits, Michaels and Plaintiff Nouri explain that an individual named Wameeth Bahoora informed them that he had previously had conversations with Defendant Jarbou, during which she indicated that she deeply resented

individuals of Chaldean descent and, if a Chaldean defendant came "through her court, then she would destroy him." *Id.*, p. ID 918, ¶ 5; p. ID 919, ¶ 5.

Plaintiff Nouri proceeded to trial and was convicted of one count of first-degree criminal sexual conduct and two counts of fourth-degree criminal sexual conduct. Doc. No. 85, p. ID 889, ¶ 29. Plaintiff Nouri alleges that one of the state's witnesses, Savio, had lied during the trial proceedings. *Id.*, ¶ 31. Furthermore, it is alleged that a juror had committed an improper experiment. *Id.*, ¶ 32. Plaintiff Nouri also alleges that Defendant Wiemer improperly excluded a phone call from evidence that would have discredited the timeline alleged by Kirma, and improperly testified that a DNA test had been conducted on the vaginal swab taken during the rape kit, despite the fact that no DNA testing was done. *Id.*, ¶¶ 34-35.

Plaintiff Nouri was sentenced and imprisoned. He was incarcerated at the Oakland County Jail. Doc. No. 85, p. ID 893, ¶ 52. On August 10, 2009,[1] Plaintiff Nouri wrote to Defendant Karsen, a deputy, informing him that Plaintiff Nouri's cellmates had threatened to beat him up and stating that he needed to be moved to another cell out of fear for his safety. *Id.*, ¶ 52. A deputy came by Plaintiff Nouri's cell that evening and failed to address Plaintiff's Nouri's request that he be moved. *Id.*, ¶ 53. Plaintiff Nouri was assaulted that evening. *Id.*, ¶¶ 54, 56. Plaintiff Nouri was moved to a ten-man holding cell where he was housed with highly violent criminals in the maximum security section of the prison. *Id.*, ¶ 56. On or about August 29, 2009, Plaintiff Nouri filed a written request to be moved to a "safer"

---

[1] While the date is listed as August 10, 2011 in Plaintiffs' amended complaint, that date appears to be an error, since the amended complaint goes on to discuss subsequent events occurring in 2009. The Court presumes that August 10, 2009 was the correct date.

3

section of the prison, but his request was denied. *Id.*, ¶ 57. On October 11, 2009, Plaintiff Nouri was forced to defend himself against another inmate. *Id.*, ¶ 58.

On December 26, 2009, Plaintiff Nouri was attacked by other inmates and had to be hospitalized at the Pontiac Osteopathic Hospital. Doc. No. 85, p. ID 894, ¶ 60. As a result of the attack, Plaintiff Nouri received stitches for a facial wound, a broken nose, black eyes, a wound that exposed his nasal bone, a temporal artery aneurysm to the right side of his head, broken teeth, scratches, bruises, bleeding, and extreme pain. *Id.*, ¶ 61. Plaintiff Nouri had to undergo surgery on his nasal passage, and continues to suffer from a deformity and septum deviation. *Id.*, ¶ 65. Plaintiff Nouri also endured a spine fracture and lumbar canal stenosis as a result of the beatings. *Id.*, ¶ 68. The prison doctors prescribed him two blankets for his back, but the prison guards only provided him with one. *Id.*, ¶ 70.

Plaintiff Nouri was forced to go without his heart, antidepressant, and anti-anxiety medications on several occasions. Doc. No. 85, p. ID 895, ¶ 71. On May 19, 2009, Defendant Karsen became upset with Plaintiff Nouri for failing to show the prison nurse that he had swallowed his medications. *Id*. Defendant Karsen placed a hold on all of Plaintiff Nouri's medications in retaliation for the incident, and Plaintiff Nouri's medication was withheld from him for at least a week. *Id*.

The prison dentist determined that Plaintiff Nouri suffered from infections and a loose bone at the site of his broken and infected teeth, along with a gum abscess with an exposed nerve. *Id.*, ¶ 72. The dentist informed Plaintiff Nouri that he required dental work, but the work was not completed. *Id.*, ¶ 73. Plaintiff Nouri visited a dentist after his release from prison, at which point he was informed that he needed teeth implants and a bone graft. *Id.*,

4

¶ 79. Plaintiff Nouri also discovered that he had a chronic abrasion in his cornea as a result of the beatings he suffered. *Id*.

Three years after Plaintiff Nouri was imprisoned, Plaintiff Nouri's attorney obtained a tape recording in which Kirma admitted to committing perjury. Doc. No. 85, p. ID 891, ¶ 39. This tape was shared with the prosecutor's office, who then interviewed Kirma, at which time she admitted to perjury. *Id.*, ¶ 41. Plaintiff Nouri and the prosecutor's office entered into a stipulation agreeing that Plaintiff's Nouri's motion for a new trial should be granted, based on this "newly discovered evidence." Doc. No. 88, Ex. 2, p. ID 955. The Oakland County Circuit Court subsequently granted Plaintiff Nouri's motion and vacated his three criminal sexual conduct convictions. Doc. No. 88, Ex. 3, p. ID 957. Plaintiff Nouri subsequently entered into a plea agreement with the prosecutor's office, whereby Plaintiff pled nolo contendre to an aggravated assault charge, and the criminal sexual conduct charges were dismissed. Doc. No. 88, Ex. 4, p. ID 958. The parties filed a factual basis stipulation, in which it was stipulated that at a trial the prosecution would produce evidence to establish that Plaintiff Nouri had touched Kirma without her consent and that the unconsented touching resulted in an injury sufficient to satisfy the injury requirement of M.C.L. § 750.81a. Doc. No. 88, Ex. 5, p. ID 961. According to his amended complaint, Plaintiff Nouri entered into the plea because a rejection of the plea may have resulted in his continued incarceration while his conviction was appealed. Doc. No. 85, p. ID 892, ¶ 46.

In their amended complaint, Plaintiffs include the following claims: Count One: violations of Fourth and Fourteenth Amendment claim for false arrest and false imprisonment as to Oakland County, Hala Jarbou, and the Hazel Park Police Department; Count Two: violation of 42 U.S.C. § 1985 as to Hala Jarbou (which the Court understands

to be a conspiracy claim alleging that Plaintiff Nouri was prosecuted based on his race); Count Three: violation of the Elliott Larsen Civil Rights Act as to Oakland County and Hala Jarbou; Count Four: malicious prosecution as to Oakland County and Hala Jarbou; Count Five: common law malicious prosecution as to Oakland County and Hala Jarbou; Count Six: abuse of process as to Oakland County and Hala Jarbou; Count Seven: Fourteenth Amendment violations as to Sheriff Michael Bouchard and Oakland County; Count Eight: Eighth Amendment violations as to Michael Bouchard and Oakland County; Count Nine: violations of Fourth and Fourteenth Amendment as to Jason Wiemer and the Hazel Park Police Department; Count Ten: gross negligence as to Oakland County and Hala Jarbou; Count Eleven: gross negligence as to Jason Wiemer and the Hazel Park Police Department; Count Twelve: gross negligence as to Oakland County and Michael Bouchard; Count Thirteen: intentional and negligent infliction of emotional distress; Count Fourteen: loss of consortium with respect to Rouwaida Nouri; Count Fifteen: loss of consortium with respect to Hakam, Jacob, Sami, and Maria Nouri; and Count Sixteen: unconstitutional denial of visitation of Plaintiff Nouri's minor children.

## Standard of Review

A Rule 12(c) motion for judgment on the pleadings may be filed after pleadings are closed, whereas a Rule 12(b)(6) motion to dismiss must be made before pleading if a responsive pleading is allowed. Fed. R. Civ. P. 12. The Court finds it appropriate to treat this motion as a Rule 12(b)(6) motion. Regardless, a Rule 12(c) motion has the same standard of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (internal citations omitted). In reviewing a motion to dismiss pursuant to Fed. R. Civ.

P. 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997), *citing Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203, *citing Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88, *citing In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). In *Twombly*, the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. at 555 (internal citations omitted).

The Supreme Court has clarified that *Twombly* is not limited "to pleadings made in the context of an antitrust dispute." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009). The Court emphasized that "though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. That Rule in turn governs the pleadings standard 'in all civil actions[.]" *Id.*, *citing Twombly*, 550 U.S. at 555-56.

7

When reviewing a Rule 12(b)(6) motion to dismiss, "a district court may not consider matters beyond the complaint." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 575 (6th Cir. 2008), *citing Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001). However, matters of public record, along with orders, items appearing in the case record, exhibits attached to the complaint, and documents referred to in the complaint and central to the plaintiff's claim, may all be considered in deciding a Rule 12(b)(6) motion. *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *Hamlin v. Baptist Memorial Hospital*, 2011 WL 902351 at *2 (W.D. Tenn. 2011). Since the stipulation and order for a new trial, along with the plea agreement, are matters of public record, the Court finds it appropriate to consider them without converting this 12(b)(6) motion to a motion for summary judgment.

### **Claims against Defendant Jarbou**

Defendant Jarbou argues that she is entitled to a dismissal of Plaintiffs' federal and state law claims against her on the basis of absolute prosecutorial immunity. The Supreme Court embraces a functional approach in determining whether a prosecutor is entitled to absolute immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Under this functional approach, acts which occur in the course of the prosecutor's role as advocate are entitled to the protection of absolute immunity; "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not[.]" *Buckley*, 509 U.S. at 273 (internal citation omitted). "[T]he critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the

8

judicial phase of the criminal process." *Howell v. Sanders*, 668 F.3d 344, 349-50 (6th Cir. 2012), *quoting Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir.), *cert. denied*, 522 U.S. 996 (1997).

Plaintiffs' amended complaint refers to Defendant Jarbou's decision to prosecute the case against Plaintiff Nouri. "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." *Howell*, 668 F.3d at 351, *citing Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Ireland*, 113 F.3d at 1446. The activities engaged in by Defendant Jarbou, as alleged in Plaintiffs' amended complaint, therefore appear to clearly fall under the protection of prosecutorial immunity.

The Court acknowledges that prosecutors will not be protected from decisions regarding prosecution that are "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification[.]" *Wayte v. United States*, 470 U.S. 598, 608 (1985). In his amended complaint, Plaintiff Nouri alleges that Defendant Jarbou based her decision to prosecute him on his race. Plaintiffs' amended complaint, however, does not allege that similarly situated persons of non-Chaldean descent were not prosecuted, a requirement of a selective prosecution claim. *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000). Since the plaintiff hasn't pled that non-Chaldeans were not prosecuted, the plaintiff has not stated a claim of selective prosecution and Defendant Jarbou is entitled to dismissal of that claim. Since there is no selective prosecution claim at issue here, Defendant Jarbou is entitled to prosecutorial immunity on Plaintiffs' § 1983 claims against her. Defendant Jarbou is also entitled to prosecutorial immunity on Plaintiffs' state law

claims against her. *See Payton v. Wayne County*, 137 Mich. App. 361, 371 (1984); *Fifield v. City of Lansing*, 2001 WL 1134607, at *3 (Mich. Ct. App. Sept. 21, 2001).

### **Defendant Bouchard**

Defendant Bouchard argues that Plaintiffs' state law claims against him in his individual capacity are barred by absolute governmental immunity. M.C.L. § 691.1407(5) provides the following:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

M.C.L. § 691.1407(5). "That statute creates absolute immunity from state tort claims for the highest elected official in local government." *Rose v. Saginaw County*, 353 F.Supp.2d 900, 924-25 (E.D. Mich. 2005), *citing Transmissions, Inc. v. Atty. Gen.*, 454 Mich. 135 (1997). Defendant Bouchard asserts, and Plaintiffs do not dispute, that he is the highest elected official within the Oakland County Sheriff's Department. Furthermore, Defendant Bouchard was alleged to have failed to train, discipline, and supervise his employees, and was therefore alleged to have been acting within the course and scope of his employment. Defendant Bouchard is entitled to absolute governmental immunity from Plaintiffs' state law claims against him. *See Savage v. Kalamazoo County*, 1998 WL 276132, at *9 (W.D. Mich. May 5, 1998) (Quist, J.). Plaintiffs' argument that Defendant Bouchard's conduct was grossly negligent is unavailing, since gross negligence does not prevent immunity under this subsection of the Michigan statute. Plaintiffs' state law claims against Defendant Bouchard will be dismissed.

10

Plaintiffs have also alleged Constitutional claims against Defendant Bouchard based on his alleged failure to adequately train, discipline, and supervise his employees. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), cert. denied 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if a plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz,* 963 F.2d 851, 854 (6th Cir. 1992).

11

Plaintiffs have not alleged facts establishing that Defendant Bouchard was personally involved in the activity which forms the basis of their claims. Plaintiffs allege that Defendant Bouchard failed to train and supervise prison staff, but make no allegation that Defendant Bouchard implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, or was even aware of, the offensive conduct. Accordingly, the Court concludes that Plaintiffs' Constitutional claims against Defendant Bouchard are properly dismissed for lack of personal involvement.

**Section 1983 Claims against Oakland County and Hazel Park Police Department**

Defendant Oakland County argues that the *Heck v. Humphrey* doctrine and the doctrine of collateral estoppel bar Plaintiffs' false arrest and malicious prosecution claims against it. Defendants Wiemer and Hazel Park Police Department concur in those arguments. The Court finds it unnecessary to address those arguments with respect to Oakland County and the Hazel Park Police Department, since Plaintiffs have failed to state a claim for municipal liability.

As the Supreme Court recently explained:

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691; see id., at 694. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *See ibid.*; *Pembaur, supra*, at 480-81; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur, supra*, at 479-80.

*Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Plaintiffs have failed to allege the existence of any official municipal policy that caused any of their injuries in the present case. Though Plaintiffs do not specifically make this allegation, it is possible that they are

12

attempting to establish liability based on a failure by Oakland County or the Hazel Park Police Department to train its police officers and prosecutors. "A systematic failure to train police officers [or prosecutors] adequately is a custom or policy which can lead to municipal liability." *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010). However, such a failure to train amounts to liability "only if such failure amounts to deliberate indifference to the rights fo persons with whom the employees come into contact." *Savoie v. Martin*, 673 F.3d 488, 494-95 (6th Cir. 2012), *citing Miller*, 606 F.3d at 255. "To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the [employer] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Savoie*, 673 F.3d at 495, *citing Miller*, 606 F.3d at 255. Plaintiffs have failed to allege any such deliberate indifference on the part of Oakland County or the Hazel Park Police Department. Accordingly, Plaintiffs have failed to state a claim for municipal liability, and all § 1983 claims against Oakland County and the Hazel Park Police Department must be dismissed.

**State Law Claims against Oakland County and Hazel Park Police Department**

Defendant Oakland County argues that Plaintiffs' state law claims against it are barred by absolute governmental immunity. Michigan statute provides that: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." M.C.L. § 691.1407(1). The following are exceptions to this governmental agency immunity:

> failure to keep highways in reasonable repair, M.C.L. § 691.1402; the negligent operation of a government-owned motor vehicle by an employee of the agency, M.C.L. § 691.1405; dangerous or defective conditions in public buildings under the agency's control, M.C.L. § 691.1406; and the

13

> commission of an act while engaged in a proprietary function, M.C.L. § 691.1413.

*Vance v. City of Detroit*, 1995 WL 871232, at *1 n.1 (E.D. Mich. Mar. 20, 1995), *citing Ross v. Consumers Power Co.*, 420 Mich. 567, 593-94 (1983). It is clear that none of those exceptions apply in this case. The remaining question is whether Defendant Oakland County was engaged in the exercise or discharge of a governmental function when it took the actions that form the basis of Plaintiffs' state law claims against it.

Plaintiffs allege the following state law claims against Defendant Oakland County: Elliott Larsen Act violation; common law malicious prosecution, gross negligence with regard to the prosecution of Plaintiff Nouri, gross negligence with regard to the conditions of Plaintiff Nouri's incarceration, and intentional and negligent infliction of emotional distress with regard to the prosecution of Plaintiff Nouri and the conditions during his incarceration. "The operation of a jail is clearly a government function[.]" *Jackson v. County of Saginaw*, 458 Mich. 141, 148 (1998). Furthermore, "[t]here are few functions more clearly governmental in nature than the arrest, detention, and prosecution of persons suspected of having committed a crime and the decisions involved in determining which suspects should be prosecuted and which should be released." *Payton v. Detroit*, 211 Mich. App. 375, 392 (1995). Oakland County is therefore entitled to governmental immunity as to Plaintiffs' state law claims against it. Those claims will be dismissed. Furthermore, as the Hazel Park Police Department was a governmental agency engaged in the discharge of a governmental function, all state law claims against it will also be dismissed.

### Section 1983 Claims Against Defendant Wiemer

Defendant Wiemer concurs in Oakland County's argument that Plaintiffs' false arrest/false imprisonment claims are barred by the doctrines of *Heck v. Humphrey* and

14

collateral estoppel. The Court is unable to determine at this time that either doctrine applies. Plaintiffs' § 1983 claims against Defendant Wiemer will therefore not be dismissed.

### Claims against Defendants Miller, Karsen, Hein, and Gregory

Defendants Miller, Karsen, Hein, and Gregory argue that Plaintiffs have failed to state a claim against them. Specifically, they argue that Plaintiffs fail to adequately explain their role in the alleged unlawful conduct and fail to properly connect their alleged unlawful conduct to any of the sixteen counts listed in Plaintiffs' amended complaint. Doc. No. 88, p. ID 943. In response, Plaintiffs argue that Plaintiff Nouri's original complaint [Doc. No. 1] "states in full detail the allegations against" Defendants Karsen, Hein, and Gregory. Doc. No. 103, p. ID 1576. However, the filing of Plaintiffs' amended complaint [Doc. No. 85] invalidated Plaintiff Nouri's original complaint [Doc. No. 1]. *B & H Medical, LLC v. ABP Admin., Inc.*, 526 F.3d 257, 267 n.8 (6th Cir. 2008), *quoting Drake v. City of Detroit*, 2008 WL 482283, at *2 (6th Cir. Feb. 21, 2008) ("a prior 'complaint is a nullity, because an amended complaint supercedes all prior complaints"). Therefore, Plaintiff Nouri's original complaint cannot be considered in determining whether Plaintiffs have stated a claim against Defendants Miller, Karsen, Hein, and Gregory.

Plaintiffs' amended complaint specifically names Defendants Miller, Karsen, Hein, and Gregory in the following places: Plaintiff Nouri states that, while he was incarcerated at the Oakland County Jail, he wrote to Defendant Karsen on August 10, 2011, and informed him that Plaintiff Nouri's cellmates had threatened to beat him and he needed to be moved to a different cell out of fear for his safety. Am. Compl., Doc. No. 85, p. ID 893, ¶ 52. Plaintiff Nouri then indicates that he was assaulted, and it was "only after the assault occurred [that] the prisoner guards [took] action." *Id.*, ¶ 55. Later, Plaintiff Nouri states that

15

"further injuries were later discovered which were a result of the brutal beatings Dr. Nouri had to endure because of the gross lack of supervision by the prison guards, including but not limited to, Sergeant Chris Miller, Deputy Hein and Deputy James Gregory." *Id.*, pp. ID 894-95, ¶ 67. Finally, Plaintiff Nouri describes a situation where Defendant Karsen allegedly placed a hold on all of Plaintiff Nouri's medications, including his needed heart medication, for at least one week. *Id.*, pp. ID 895-96, ¶ 71.

Defendants correctly assert that, while Plaintiff Nouri does name Defendants Miller, Karsen, Hein, and Gregory in his "statement of facts," he does not name any of them in any of his "counts." To meet Rule 8 pleading requirements, a plaintiff must give "a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). While Plaintiff Nouri did not name Defendants Miller, Karsen, Hein, or Gregory in his "counts", it is apparent to the Court that he has stated Eighth Amendment deliberate indifference claims against them. Plaintiff Nouri's allegations are sufficient to give these defendants notice of his Eighth Amendment claims against them and the grounds on which they rest. Plaintiff Nouri has stated a claim against Defendants Miller, Karsen, Hein, and Gregory, and they will not be dismissed from this action.

### Denial of Visitation Claim

While Plaintiffs include a claim for the unconstitutional denial of visitation of Plaintiff Nouri's children, they do not give any indication as to which defendants that claim is being brought against. Accordingly, the claim will be dismissed. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012), *citing Kesterson v. Moritsugo*, 1998 WL 321008, at *4

16

(6th Cir. 1998) (holding that a plaintiff must allege that particular defendants performed the acts that resulted in a deprivation of plaintiff's constitutional rights for a complaint to survive).

## Conclusion

The Oakland County Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. No. 88] is GRANTED IN PART AND DENIED IN PART. Plaintiffs' § 1983 and state law claims against Oakland County are DISMISSED WITH PREJUDICE. Plaintiffs' § 1983 claims and state law claims against Defendant Hazel Park Police are DISMISSED WITH PREJUDICE. Additionally, Plaintiffs' § 1983 and state law claims against Defendant Bouchard are DISMISSED WITH PREJUDICE. Plaintiffs' § 1983 and state law claims against Defendant Jarbou are DISMISSED WITH PREJUDICE. Plaintiffs' claim regarding the unconstitutional denial of visitation rights is DISMISSED WITH PREJUDICE. The following claims remain against Defendant Wiemer: violation of Fourth and Fourteenth Amendment regarding his investigation; gross negligence; and intentional and negligent infliction of emotional distress. The following claims remain against Defendants Miller, Karsen, Hein, and Gregory: Eighth Amendment deliberate indifference claim. In addition, Rouwaida Nouri, Hakam, Jacob, Sami, and Maria Nouri's loss of consortium claims remain.

SO ORDERED.

Dated: 2/4/2013      /s/ R. Allan Edgar
                    R. Allan Edgar
                    United States District Judge